United States District Court
Southern District of Texas
ENTERED
September 30, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARLTON BROWN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:24-cv-02420 |
| | § | |
| DENIS MCDONOUGH, ET AL., | § | |
| | § | |
| *Defendants*. | § | |

**ORDER**

Pending before this Court is Defendant's Motion for Summary Judgment. (Doc. No. 43). Plaintiff, Carlton Brown, ("Plaintiff") responded in opposition. (Doc. No. 44). Defendant replied. (Doc. No. 46). After reviewing the briefing and applicable law, the Court **GRANTS** Defendant's Motion. (Doc. No. 43).

## I. BACKGROUND

This case concerns multiple allegations of employment discrimination on the basis of race, sex, color, national origin, and disability against the Department of Veterans Affairs. Plaintiff, Carlton Brown, is a Black male of Kenyan origin who suffers from anxiety and hypertension. (Doc. No. 43, Ex. A, 26:13-21; Ex. B, p. 2). Plaintiff began working as a Human Resources Labor Specialist in 2013 at the Michael E. DeBakey VA Medical Center in Houston, Texas. (*Id.*, Ex. A, 16:19-25).

In March of 2019, Plaintiff applied for the position of Lead Human Resources Specialist, GS-13. Plaintiff had a second interview for the position on March 18 of that same year. Although Plaintiff was ranked number one for the position, Defendant hired two other individuals, one of whom was a white male, the other, a Black female. (Doc. No. 43, Ex. C, p. 6). When asked why

she did not select Plaintiff, Robin Miller, the deciding individual, stated that she found his answers to sometimes fail to answer her question and sometimes lack candor "causing [her] to question the integrity and truthfulness" of Plaintiff. (*Id.* at 7).

On May 17, 2019, Plaintiff requested a Quality Step Increase (QSI) which was denied. While the individuals responsible for granting this award do not dispute that Plaintiff may have been eligible for the award, they assert that QSIs are a rare award and have never been awarded twice in consecutive years. (Doc. No. 43, Ex. F, p. 5-6). Plaintiff was awarded a QSI in the year prior. (*Id.* at 8).

On June 12, 2019, Plaintiff's telework agreement which allowed him to work from a remote location was terminated by Charley Reed. (Doc. No. 43, Ex. E, p. 8). Plaintiff alleges that only the minority workers in the office received this termination while their non-minority counterparts maintained their telework agreements. (Doc. No. 43, Ex. A, 67:19-25). Defendant disputes this claim, alleging instead that the terminating email was sent to all Employment Relations and Labor Relations specialists. (Doc. No. 43, Ex. E, p. 9). On this same day, Plaintiff filed a formal complaint with the Equal Employment Office (EEO) alleging discrimination on the basis of his non-selection in March. (Doc. No. 43, Ex. B, p. 1-2).

Later that month, Plaintiff requested an accommodation of 100% telework for his disabilities of anxiety and hypertension. (Doc. No. 43, Ex. D, p. 5). Plaintiff testified that he developed these disabilities due to the way he was being treated at the workplace. (Doc. No. 43, Ex. A, 33:13-19). Plaintiff claims that he was subjected to a harassing and retaliatory fact-finding investigation on July 30, 2019. (Doc. No. 16, ¶ 28). Plaintiff then filed an additional EEO complaint on the same day, alleging discrimination on the basis of race for the denial of his QSI

request, the termination of his telework agreement, delayed response to his accommodation request, and a harassing fact-finding investigation. (Doc. No. 43, Ex. B, p. 5).

Plaintiff alleges that his accommodation request was unreasonably and discriminatorily delayed and eventually denied by Michael Heath, Jerome Mabry, and Robin Miller. (Doc. No. 16, ¶ 26; Doc. No. 44, Ex. 1). Defendant disputes this characterization, arguing that there was a legitimate administrative reason for the delay and that there was no denial as Plaintiff has been working 100% telework since August of 2019. (Doc. No. 43, Ex. D, p. 3). Defendant offered Plaintiff an alternate accommodation to service the Central Arkansas VA Medical Center, rather than the Michael E. DeBakey VA Medical Center on October 6, 2019. Plaintiff strongly opposed this accommodation and alleges that he only accepted it under duress and considered it to be retaliation. (Doc. No. 43, Ex. D, p. 7-8). Robin Miller stated that she offered it to Plaintiff to prevent any need at all for Plaintiff to work on the Michael E. DeBakey campus. (*Id.* at 7).

Plaintiff also alleges that during this time, Michael Heath and Jerome Mabry harassed him in the workplace by yelling at him, making angry faces, and pointing at him. (Doc. No. 43, Ex. A, 48:1-25). Although Plaintiff could not remember what they said, Plaintiff found them to be intimidating, aggressive, and cause him to be fearful because they were larger than he was at the time. (*Id.*).

## II. LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III. ANALYSIS

### A. Plaintiff's claims under the Rehabilitation Act are dismissed.

Plaintiff's failure-to-accommodate claim and retaliation claim under the Rehabilitation Act were previously dismissed on Motion to Dismiss for failure to state a claim. (Doc. No. 21). Plaintiff did not thereafter amend his complaint. Accordingly, the Court has already dismissed Plaintiff's claim for failure-to-accommodate and disability discrimination under the Rehabilitation Act.

### B. Title VII Race, Sex, Color, and National Origin Discrimination

Plaintiff asserts that he was discriminated against on these bases on five different occasions: (1) non-selection for the Human Resources Specialist position; (2) non-selection for the Lead Human Resources Specialist position; (3) denial of his request for a Quality Step Increase;

(4) termination of his telework agreement; and (5) reassignment to service the Central Arkansas VA Healthcare System.[1]

*i. Legal Standard*

Title VII of the Civil Rights Act makes it unlawful for an employer to discriminate against any individual on the basis of that individual's race, religion, color, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove intentional discrimination under Title VII either with direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 S.W.3d 219, 222 (5th Cir. 2000). Where a plaintiff relies on circumstantial evidence, the Court applies the *McDonnell Douglas* burden-shifting framework. *Id.* Under that framework, the plaintiff bears the burden of establishing his prima facie case of discrimination by showing: (1) he is a member of a protected class; (2) he was qualified for the position or benefit; (3) he was subject to an adverse employment action; and (4) others similarly situated but outside of plaintiff's protected class experienced more favorable treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "Similarly situated" is defined narrowly and requires proof of a nearly identical comparator outside of Plaintiff's protected class. *West v. City of Houston, Texas*, 960 F.3d 736, 740 (5th Cir. 2020). "Employees are similarly situated when they (1) held the same job or responsibilities, (2) shared the same supervisor or had their employment status determined by the same person, and (3) have essentially comparable violation histories." *Id.* (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009))(internal citations omitted).

The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. The burden on the

[1] Plaintiff concedes that he was ineligible for the Human Resources Specialist position and withdraws the allegation of discrimination on that count. (Doc. No. 44, p. 8 n. 2). Plaintiff's other allegation of discriminatory non-selection for the Lead Human Resources Specialist role is separate and distinct and is addressed below.

employer is only one of production, not persuasion. Russell, 235 S.W.3d at 222. If the employer carries its burden, Plaintiff then must produce substantial evidence that the employer's proffered reason is a pretext for discrimination. *Green v. HCTec Partners, LLC*, No. 24-20554, 2026 WL 839112, at *2 (5th Cir. Mar. 26, 2026) (quoting *Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021))(internal citations omitted). In the context of summary judgment, plaintiff bears the burden to raise a genuine issue of fact regarding pretext. *Id.* (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017)).

*ii. Plaintiff fails to state a claim regarding his non-selection for Lead Human Resources Specialist role.*

Plaintiff claims that his non-selection for the Lead Human Resources Specialist role was discriminatory on the basis of race, color, and sex because he, a Black male who was the most qualified candidate of those who were interviewed, did not get the position. (Doc. No. 44, at 13). Instead, the position was given to a White male, who was the second-most qualified, and a Black female, who was the third-most qualified candidate. (Doc. No. 43, Ex. A, 65:6-7). To defeat Defendant's motion for summary judgment as to this instance of alleged discrimination, Plaintiff must show that (1) he is a member of a protected class, (2) that he was qualified for the Lead Human Resources Specialist role, (3) that by not getting the position he suffered adverse employment action, and (4) that there were others similarly situated but outside of his protected classes that were treated more favorably.

Defendant asserts that Plaintiff has failed to do so because the two employees selected for the position were within his protected classes of either Black or male. (Doc. No. 43, Ex. C, p. 6). The Court disagrees. Plaintiff provides sufficient comparator evidence to raise a fact issue that others outside of his race–sex class were treated more favorably. Courts have recognized for years that discrimination against Black males can exist even in the absence of discrimination against

Black females and White males. *See Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980) ("[A]n employer should not escape from liability for discrimination against black females by a showing that it does not discriminate against blacks and that it does not discriminate against females."). Therefore, Plaintiff has sufficiently raised an inference of discrimination in the decision not to select him for the Lead Human Resources Specialist position.

Defendant provides the Court with a legitimate, non-discriminatory reason for Plaintiff's non-selection. Robin Miller, the Supervisory Human Resources Specialist in charge of hiring for this position, explained that her decision not to hire Plaintiff was due to his responses to two questions during the final interview. (Doc. No. 43, Ex. C, p. 6). For one of the questions, Plaintiff did not satisfactorily address all aspects of Miller's question as to how Plaintiff would handle leading an entirely virtual team. (*Id.*). Miller also found issue with Plaintiff's assertion that he had "cleared out" a large backlog of cases and that the backlog no longer existed. (*Id.* at 7). Miller, having knowledge of the status of the backlog, knew this claim to be false. (*Id.*). She, therefore, decided not to select Plaintiff for the position due to his lack of candor in this response.

Plaintiff rebuts by arguing that Miller knew that the backlog had in fact been significantly reduced. (Doc. No. 44, Ex. 3). He points to an email sent to Miller on March 25, 2019, informing her that the backlog of cases more than 30 days old had been reduced from 156 to 95, and the overall total pending "LMR" cases had been reduced from 210 to 129. (Doc. No. 44, Ex. 3). Therefore, Plaintiff asserts, the reasoning proffered by Defendant must be pretextual as it is false.

A plaintiff may establish pretext through evidence of disparate treatment or by showing that the defendant's proffered reason is false or not worthy of credence. *Green v. HCTec Partners, LLC*, No. 24-20554, 2026 WL 839112, at *2 (5th Cir. Mar. 26, 2026)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)). The determination on summary judgment is

"whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination." *Id.* (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000). In other words, the evidence must show both that the reason was false and that discrimination was the real reason. *See Reeves*, 530 U.S. at 147. For falsity alone to suffice to allow a trier of fact to reasonably infer discrimination, "the evidence of falsity must be of sufficient nature, extent, and quality to make the inferential leap to discrimination a rational one." *Id.* (quoting *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 n.7 (5th Cir. 2022))(internal citations omitted).

Plaintiff's evidence that Miller had knowledge that the backlog had been reduced does not establish that Miller's reasoning for the non-selection was false as Miller did not receive status updates regarding the backlog until March 25—after the non-selection had occurred. Plaintiff referenced his work in clearing out the backlog in his interview on March 18, 2019. (Doc. No. 43, Ex. C, p. 6-7). Miller awarded the other two candidates the position on March 21, 2019. (*Id.* at 1). Miller was not updated on the status of the backlog until March 25, 2019. (Doc. No. 44, Ex. 3). Therefore, Plaintiff's assertion that Miller possessed knowledge of the progress that had been made on the backlog when making the selection decision is directly contradicted. (Doc. No. 44, Ex. 3). Moreover, the uncontroverted evidence cited to by Plaintiff still shows a large backlog, so it had not been "cleared out" as Plaintiff represented to Miller. (Doc. No. 44, Ex. 3). Plaintiff has failed to provide any evidence of either falsity to the nature, extent, and quality required or disparate treatment on the basis of his race or sex. Therefore, Plaintiff's evidence failed to raise a genuine question as to whether Miller's proffered reason was pretextual.

Accordingly, the Court GRANTS Defendant's motion as it applies to Plaintiff's claim of discrimination for non-selection for the Lead Human Resources Specialist role.

*iii. Plaintiff fails to establish a prima facie case of discrimination in his reassignment to Arkansas, the denial of his QSI, and in the termination of his telework agreement.*

In addition to Plaintiff's non-selection, Plaintiff alleges that Defendant discriminated against him by assigning him to remotely service the Central Arkansas VA Medical Center rather than Houston and dening his QSI. For both of these claims, Plaintiff fails to identify any other individual outside of his protected classes that was treated differently in a similar situation. In the absence of direct evidence of discrimination, Plaintiff has failed to establish the prima facie case required by *McDonnell Douglas*.

Plaintiff also alleges that Defendant discriminated against him by cancelling his telework agreement.[2] (Doc. No. 16, ¶¶ 21-22). Plaintiff contends that the agreements were cancelled by an email sent only to the "minorities" in the office—in other words, "[t]he Caucasians were not on the email." (Doc. No. 43, Ex. A, 67:15-68:16). Defendant contests this assertion, instead claiming that the email was sent to all employment relations/labor relations employees and staffing specialists. (Doc. No. 43, Ex. E, p. 8-9). Plaintiff points to his colleague Stephanie—whose last name he could not recall—as a white comparator who did not receive this email and who did not have her telework agreement cancelled. (Doc. No. 43, Ex. A, 68: 3-10). To be a sufficiently similarly situated comparator, Stephanie must have (1) held the same job or responsibilities as Plaintiff, (2) shared the same supervisor or had their employment status determined by the same person, and (3) have essentially comparable violation histories." *See West v. City of Houston, Texas*, 960 F.3d 736, 740 (5th Cir. 2020)(quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009))(internal citations omitted). Plaintiff admits that Stephanie did not have the same

[2] In making this argument, Plaintiff ignores the fact that he has also alleged and conceded that Defendant has assigned him a totally telework position just as he requested to accommodate his anxiety and hypertension. (Doc. No. 16, ¶¶ 29-30; Doc. No. 44, Ex. 1).

job as him. (Doc. No. 43, Ex. A, 68:11-22).[3] As such, Plaintiff failed to establish a prima facie case for discrimination for cancellation of the telework agreements.

Accordingly, the Court GRANTS Defendant's motion as it applies to Plaintiff's claim of discrimination for denial of QSI request, cancellation of telework agreements, and reassignment.

### C. Title VII Retaliation

*i. Standard*

Title VII prohibits employers from discriminating against any employee for having engaged in a statutorily protected activity. 42 U.S.C. § 2000e-3(a). Where a retaliation claim is premised on circumstantial evidence is analyzed under the McDonnell Douglas burden-shifting framework. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). To establish his prima facie case, Plaintiff must demonstrate that: (1) he engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment action. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 348 (5th Cir. 2007). Adverse employment actions consist of "ultimate employment decisions." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). An employment transfer may qualify as an adverse employment action if the change makes the job objectively worse. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004). On the other hand, where the action did not result in an objective loss of compensation, duties, or benefits, the evidence will be insufficient to establish adverse employment action. *Id.* This is to be interpreted broadly to include any "benefits that comprise the incidents of employment, or that form an aspect of the relationship between the employer and employees." *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 501 (5th Cir. 2023) (quoting

[3] Plaintiff asserted that the email was not only sent to minority Labor Specialists but to minorities from the entire HR department. (Doc. No. 43, Ex. A, 68:23-25). When asked if Plaintiff knew of any Labor Specialists outside of his protected class who maintained their telework agreement, he responded, "I don't recall." (*Id.* at 69:9-11).

*Hishon v. King and Spalding*, 467 U.S. 69, 77 (1994)). Finally, a plaintiff may sufficiently prove causation between the protected activity and the adverse employment action by showing close timing between the two actions. *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). Lapses of up to four months may generally be sufficient, but a lapse of five months will be insufficient without additional evidence. *Id.* (citing *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002)).

*ii. Analysis*

Plaintiff alleges that his 2014/2015 and 2019 EEO activities caused Defendant to retaliate against him in the form of denying his QSI request, cancelling his telework agreement, delaying and denying his accommodation request, subjecting him to a harassing fact-finding investigation, and reassigning him to serve the Arkansas VA. To prevail on his retaliation claim, Plaintiff must show that (1) his EEO activities constituted engagement in a statutorily protected activity, (2) the above-listed incidents constitute adverse employment action, and (3) there is a causal link between his EEO activity and the incidents listed. By consulting and filing both formal and informal complaints with the EEO, Plaintiff engaged in statutorily protected activities. 42 U.S.C. § 2000e-3(a). The Court will consider each allegation of retaliation in turn.

Defendant argues that Plaintiff cannot establish causation based on his 2014/2015 EEO activity due to the five-year gap between the protected activity and the adverse employment actions. The Court agrees. *See Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (showing lapses of more than five months to be insufficient). Plaintiff nevertheless alleges that he engaged in further protected activity in the spring of 2019 that forms the basis of his retaliation claim.

1. Denial of QSI

Plaintiff fails to prove causation with regard to his QSI denial. Plaintiff claims that he contacted an EEO counselor in either late April or early May of 2019 regarding his non-selection for the Lead Human Resources Specialist role in March. (Doc. No. 16, ¶ 18). In support of his claim, Plaintiff points to his deposition in which he states that he had an EEO consultation in "possibly the spring of 2019." (Doc. No. 44, Ex. A, 76:9-10). Plaintiff claims that his QSI request was denied on May 17, 2019, in retaliation for this EEO consultation. (Doc. No. 43, Ex. F, p. 5). There is no evidence that the consultation took place before Plaintiff's QSI was denied. Plaintiff has also failed to show that Charley Reed, Kathy Salazar, and Francisco Vazquez, the individuals responsible for denying his QSI, knew about this consultation.[4] Plaintiff speculates that his QSI was denied as a result of his contact with the EEO, but his claim is just that—speculation. Therefore, the denial of QSI cannot form the basis of Plaintiff's retaliation claim.

2. Cancellation of Telework Agreement

Plaintiff fails to raise a genuine issue of fact regarding causation for the June 12 denial of his telework agreement. On June 12, 2019, Plaintiff's telework agreement was cancelled, along with the agreements of others in his department. (Doc. No. 43, Ex. E, p. 8). Also on June 12, 2019, Plaintiff filed a formal complaint with the EEO. (Doc. No. 43, Ex. B, p. 1-2). Charley Reed cancelled the telework agreements at 10:57AM on June 12, 2019. (Doc. No. 43, Ex. E, p. 8). Plaintiff provides no evidence that his EEO complaint was filed before Reed sent the terminating email. Further, Plaintiff fails to show that Reed knew about the complaint or the alleged EEO

[4] Vazquez was unaware of any EEO involvement during that time period, stating in his affidavit: "I am notified by ORM any time an employee of the medical center files a complaint. If the Complainant filed an EEO complaint in April 2019, I would have been notified." (Doc. No. 43, Ex. H, p. 4). The fact that Vazquez was not notified of an EEO filing is evidence that non was filed at that time.

consultation.[5] Therefore, the termination of Plaintiff's telework agreement cannot form the basis of his retaliation claim. He later requested a disability accommodation to work 100% telework, which was granted. (Doc. No. 44, Ex. A, p. 1).

3. Fact-Finding Investigation

Plaintiff fails to raise a genuine issue of fact regarding the existence of a harassing and retaliatory fact-finding investigation. Plaintiff filed a second formal EEO complaint on July 30, 2019. (Doc. No. 43, Ex. B at p. 2). Plaintiff claims that he was retaliated against for engaging in this protected activity when, on the same day, Defendant subjected him to a harassing and retaliatory fact-finding investigation against him. (Doc. No. 16, ¶ 28). Francisco Vazquez directly disputes this assertion in his affidavit, stating, "I do not recall being aware of [Plaintiff] being subjected to a fact-finding investigation." (Doc. No. 43, Ex. H, p. 7). Plaintiff fails to provide any details regarding this alleged investigation such as the findings, the purpose, or the allegedly harassing effect it had on Plaintiff. Even if Plaintiff had provided sufficient evidence to assume that a fact-finding investigation did occur, he fails to provide any evidence that such an investigation would qualify as an adverse employment action. Therefore, Plaintiff fails to raise a fact issue regarding the fact-finding investigation.

4. Delay and Denial of Accommodation Request and Reassignment to Provide Telework Support to Arkansas Area

Plaintiff asserts that his accommodation request was delayed in retaliation for his protected activity in June and July. (Doc. No. 43, Ex. A, 53:4-14). Plaintiff fails to show how either of these occasions constitutes adverse employment action as it seems Defendant was attempting to

[5] Reed stated in his affidavit: "The only EEO activity that I am aware of on Mr. Brown is in a statement made by him in an email he sent to Ms. Robin Miller on June 17, 2019." (Doc. No. 43, Ex. E, p. 4). When asked when he became aware of Plaintiff's EEO activity, Reed responded, "June 17, 2019." (*Id.*).

accommodate Plaintiff's request. Plaintiff points to an excerpt from an investigative report documenting testimony from Alfreda Clay in which she states that there were "delays in the process caused by management." (Doc. No. 44, Ex. 1, p. 2). Defendant, on the other hand, notes that Plaintiff was working 100% telework, as he requested, by August even before his request could be fully processed. (Doc. No. 43, Ex. D, p. 3). Robin Miller's affidavit states that Defendant approved his request "and [Plaintiff] was notified that he would be assigned duties other than providing employee and labor relations support to facilities other than the Michael E. DeBakey VA Medical Center." (*Id.* at 6). Defendant explains any delay in the process as resulting from delay in receiving Plaintiff's medical paperwork, a change in personnel, and the push from leadership to have HR staff work in-person. (Doc. No. 44, Ex. 3, p. 2). Plaintiff fails to identify a period of time in which he was required to work onsite after requesting his accommodation. Defendant offered this alternative accommodation to alleviate Plaintiff's anxiety and hypertension in having to work with the people he claimed caused those impairments in the first place. (Doc. No. 43, Ex. D, p. 6). Plaintiff offers no evidence beyond his own speculation that the alleged delay and/or denial was due to retaliation. As such, Plaintiff failed to raise an issue of fact that he was retaliated against by delaying and denying his accommodation and for his reassignment to the Central Arkansas VA Medical Center.

Accordingly, the Court hereby GRANTS Defendant's motion as it applies to Plaintiff's claims of retaliation.

### D. Title VII Hostile Work Environment

Finally, Plaintiff asserts a claim of hostile work environment under Title VII due to the aforementioned incidents of alleged discrimination and "intimidating and aggressive" treatment while in the office. (Doc. No. 44, p. 11). To establish a claim of hostile work environment under

Title VII, a plaintiff must prove: "(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). For such a claim to be actionable, the environment must be "permeated with discriminatory intimidation, ridicule, and insult, that it is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). Harassment is sufficiently severe or pervasive to alter a term or condition of a victim's employment where it is "objectively hostile or abusive—meaning an environment that a reasonable person would find hostile or abusive—and is subjectively perceived by the victim as abusive." *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 400 (5th Cir. 2021) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal citations omitted). In determining whether a workplace constitutes a hostile work environment, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey*, 286 F.3d at 268 (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)).

Plaintiff bases his claim on an amalgamation of his other claims and his testimony that he experienced hostility, aggression, and feelings of being "targeted" at the workplace. Plaintiff does not specifically re-allege any individual instances of alleged discrimination, instead referring back to all of his previously asserted claims. Additionally, Plaintiff claims that Michael Heath and Jerome Mabry were intimidating and aggressive towards him. The only evidence Plaintiff supplies to this extent is his own deposition in which he states that these men were larger than he is and

would yell at him with angry expressions and point at him. (Doc. No. 43, Ex. A, 47:1-49:11; 53:15-54:6). Plaintiff could not recall what was said to him on any of these occasions. (*Id.*). While Plaintiff testifies that he subjectively found this to be harassing and abusive, he offers no evidence that it was sufficiently severe or pervasive as to affect a term of his employment beyond claiming that it is. (Doc. No. 16, ¶ 51). This is insufficient to establish a prima facie claim.

Plaintiff further fails to demonstrate how his alleged harassment was based on race. He provides no evidence beyond his personal belief that each of the incidents was discriminatorily motivated and the fact that Michael Heath and Jerome Mabry were of "a lighter tone" than he was. (Doc. No. 43, Ex. A, 71: 12-21). The Court assumes—because Plaintiff does not articulate—that Plaintiff is alleging that the hostile workplace affected his employment by causing him to suffer anxiety and hypertension which affected his ability to work. The Court need not decide whether this is sufficient since Plaintiff fails to argue or provide any evidence that Defendant knew or should have known about this harassment and failed to take remedial action.

Accordingly, the Court hereby GRANTS Defendant's motion on Plaintiff's hostile work environment claim.

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 43).

Signed on this 30th day of September, 2026.

Andrew S. Hanen
United States District Judge